# CITY OF ST. LOUIS, Appellant, v. HERMAN RUECKING, FREDERICK EISTRUP and CITY TRUST, SAFE DEPOSIT & SURETY COMPANY OF PHILADELPHIA.

In Banc, February 9, 1911.

1. **SEWER CONTRACT: Substantial Performance: Suit on Bond.** In a suit by the city on the bond of contractors who constructed a public sewer, alleging a failure to comply with the terms of the contract in the construction of the work, which was accepted and paid for by the city, a showing of a substantial compliance with the contract is a complete defense. The law does not require a literal compliance with its terms, but only substantial performance.

2. **——: ——: Assumed in Instruction: Suit on Bond.** Where the sewer contract provided that the sides of the excavation should be filled with sand, well rammed, and the evidence showed the ditch was wet and fine earth was better than sand, the court should not instruct the jury that the use of earth was not a substantial compliance with the contract, especially where the city officials inspected the work each day, knew that earth was being used, and no collusion or fraud is charged. It was for the jury to say whether the change from sand to earth was a substantial compliance.

3. **——: ——: Suit on Bond: Damages for Defective Pipes: Instructions.** Where the action is one by the city on the sewer contractor's bond to recover as damages the costs of replacing a part of the tiles, which were found after the work was accepted, to be broken, with new ones, instructions telling the jury that the substitution of material other than that called for by the contract would not alone authorize a verdict for the city, and that neither the city officers nor the contractors had any right to substitute other material except in substantial compliance with the contract, are correct.

4. **——: Trust Fund to Keep in Repair: Not Pleaded.** Where neither the clause of the contract creating a special fund for repairs for reconstruction by the contractor, on the order of the sewer commissioner, nor the ordinance authorizing said clause, is pleaded or relied upon in the petition, it will not be held that the city's suit to recover from the contractor and his bondsmen the costs of reconstructing defective work, was based upon either said clause or ordinance.

5. ————: **Suit on Bond: After Acceptance: For Defective Work: Estoppel.** Where the contract provided that the sewer "contractor will be required to correct all imperfect work when discovered before final acceptance of the work," and the evidence and ordinances show that the city retained and maintained a constant and thorough supervision of the work as it progressed, and no fraud or collusion is charged, the city is estopped, after having accepted the work and issued the special tax bills in payment of the same, to sue the contractor on his bond for the damages resulting from defects in the work thereafter discovered.

6. ————: **Change in Material: Estoppel After Acceptance.** Even though the changes in the materials to be used in the work were beyond the purview of the powers of the city's agents, yet as their unauthorized act was along the line of a business fully authorized by law and statute, the acceptance of the work by the city thereafter, with knowledge of the changes in the materials made, is binding upon the city, and thereafter the city cannot recover damages because of such changes.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster*, Judge.

AFFIRMED.

*Lambert E. Walther, Benjamin H. Charles* and *William E. Baird* for appellant.

(1) The doctrine of "substantial performance" as applied to building and construction contracts applies only where there has been an honest attempt to comply with the contract, where the deviations from its terms are slight and do not run through the entire work. St. Joseph v. Anthony, 30 Mo. 537; Woodward v. Fuller, 105 Mo. 303; Kansas City v. Swope, 79 Mo. 446; Kiley v. Oppenheimer, 55 Mo. 374; Elliott v. Caldwell, 43 Minn. 359; Glacius v. Black, 67 N. Y. 563; Foeller v. Heintz, 118 N. W. 543. (2) This doctrine as applied in this State to contracts for public work is anomalous; and even here it is applied to such contracts only where (a) some pre-

liminary step which was merely directory has been omitted or (b) in actions upon taxbills, in which case the property owner may reduce the recovery by showing the failure to strictly perform the contract. Dillon, Mun. Corp., sec. 812; Risley v. St. Louis, 34 Mo. 404; Neenan v. Smith, 60 Mo. 292; Gibson v. Owens, 115 Mo. 269; Springfield v. Weaver, 137 Mo. 669; Porter v. Construction Co., 214 Mo. 1. (3) The administrative officers of the city had no power to accept material or work different from that specified, and the contractor was charged with knowledge of this limitation upon their power. McGrath v. St. Louis, 215 Mo. 207; Leathers v. Springfield, 65 Mo. 504; Cheeney v. Brookfield, 60 Mo. 54; Campbell v. St. Louis, 71 Mo. 106; McQuiddy v. Braddock, 70 Mo. App. 535; Brick Co. v. Hamilton, 51 Mo. App. 120; Campau v. Detroit, 106 Mich. 414; Electric Co. v. Boston, 163 Mass. 64; Dillon, Mun. Corp., sec. 447. (4) "To hold that these municipal contracts, which are so carefully provided for in the charter, can be changed by any officer or subordinate would destroy the principle of competitive bidding, which is a prime feature of the charter." McGrath v. St. Louis, 215 Mo. 207; R. S. 1899, sec. 6759; St. Louis Charter, art. 6, sec. 27, and art. 16, sec. 7 (R. S. 1899, pp. 2514 and 2531).

*Rassieur & Feuerbacher* and *Kortjohn & Kortjohn* for respondents.

(1) Under the contract read in evidence, the appellant, by the acceptance of the sewer and the issuance of the special taxbills, estopped itself from instituting this action. Water and Light Co. v. Lamar, 140 Mo. 145; Water Co. v. Aurora, 129 Mo. 540; Graff v. Foster, 67 Mo. 520. (2) While the last-named case involved the sale of personal property, yet under circumstances such as exist in this case, the same rule applies to improvements on real estate. Grimm v. Ga-

mache, 25 Mo. 46; Stewart v. Fulton, 31 Mo. 61. (3) The doctrine of substantial performance was properly applied by the court in the trial, and in the giving of instructions. St. Joseph v. Anthony, 30 Mo. 537; Cole v. Skrainka, 105 Mo. 303; Steffen v. Fox, 124 Mo. 630; Johnson v. Duer, 115 Mo. 366; Paving Co. v. Ullman, 137 Mo. 570; Whitworth v. Webb City, 204 Mo. 579; Porter v. Paving Co., 214 Mo. 1.

GRAVES, J.—The city of St. Louis brought this action upon the bond of defendants, Ruecking and Eistrup, copartners, and their surety, said bond being conditioned upon the faithful performance of a contract to construct a certain sewer for the city.

The petition alleged that on October 17, 1901, the appellant entered into a contract with Ruecking and Eistrup, contractors, by the terms of which they agreed to build a certain sewer in a workmanlike manner, according to plans and specifications on file in the office of the sewer commissioner of the city of St. Louis. That by said plans and specifications, defendants were required to use sewer pipe of the best quality of hard-burned salt-glazed vitrified clay pipe; that the pipes should be joined by filling the sockets with a mortar made of one part of Portland cement and three parts sand, and with only water enough to give a proper consistency and to be used as soon as made; that great care should be taken to make the entire joint perfectly water tight; that the space between the pipes when not laid in concrete and the sides of the excavation should be filled with sand, well rammed up to the middle of the pipe, and that from this point for at least twelve inches above the pipe the earth should be filled in so as not to disturb the pipe, and thoroughly rammed or soaked with water as might be directed; that during freezing weather laying of pipe sewers

should, as a rule, be suspended, unless otherwise directed by the sewer commissioner.

Plaintiff alleged as breaches the violation of all the above specifications, in the words of the petition as follows:

"The said defendants Herman Ruecking and Frederick Eistrup did fail, neglect and refuse to comply with the specifications and stipulations of the said contract, in this, to-wit: that in doing the work undertaken by them in the said contract they failed, neglected and refused to do the same in a substantial and workmanlike manner; that certain twenty-four-inch pipes laid by the said defendants in Grand avenue from Delor street northwardly to Itaska street, in said Fillmore Street Sewer District No. 2, were not of the best quality of hard-burned glazed vitrified clay pipe, but the said pipes were insufficiently burned, were soft and porous in texture, were not vitrified and were not of the best quality; that in certain places where the said pipes were, or should have been, joined, the sockets were not filled with mortar as in the said contract required, and the said joints were not made perfectly water tight as therein required; that at the places above mentioned the space between the pipes (when not laid in concrete) and the sides of the excavation were not filled with sand well rammed up to the middle of the pipe, nor was the earth filled in for at least twelve inches above the pipe so as not to disturb the pipe, nor was the same thoroughly rammed or soaked with water; that during the freezing weather the laying of pipe sewers was not suspended."

Plaintiff further alleged that the work in said contract provided for was completed and accepted by plaintiff on or about the 24th of October, 1903, and was fully paid for. That on or about the 8th of August, 1904, the plaintiff through its agents, the sewer commissioner and subordinates, discovered that cer-

tain twenty-four-inch pipes laid by said defendants in Grand avenue from Delor street northward to Itaska street were broken and cracked. That defendants were notified to replace the same with new pipe which they refused to do. That the city thereafter caused the broken and cracked pipes to be removed and replaced them with new pipes at a cost of work and material of $1598.41 to the city. Then follows prayer for judgment.

Defendants' answer, after formal admission as to the capacity of the parties and the execution of the contract and bond mentioned in the petition, contained a general denial of the other allegations of the petition and further answered by alleging that defendants faithfully performed all work required by the terms of said contract and the plans and specifications prepared by the plaintiff; that whatever defects were discovered by plaintiff's agents were caused by the faulty plans and specifications which called for the best quality of twenty-four-inch hard-burned, soft salt-glazed, vitrified clay pipe, which kind of pipe was too weak, insufficient and inadequate for the purpose for which it was specified. They further aver an inspection and acceptance of the material and work as the construction progressed, as well as a final acceptance and payment for the work.

The reply denied the new matter set up in the answer.

At the beginning of the trial defendants demurred to the introduction of evidence, which demurrer was overruled.

Plaintiff introduced in evidence a certified copy of the contract and specifications and plans, as proof of the plans and specifications alleged to have been violated and disregarded by defendants.

After evidence was heard upon both sides and the cause was submitted to a jury, a verdict, signed by nine

jurors, was returned in favor of the defendants. Judgment followed the verdict and after timely motions and other required steps being taken the cause is here upon appeal of the city. Complaint is largely lodged against instructions and these with the pertinent facts will be taken with the points made.

I. Among other things the following appear. There was proof on both sides as to the character of the tiling used. It stood admitted that the contractors had not used the sand in packing the tile, but had used loose dirt, but on the other hand there was proof that in damp ditches, such as the one in question, the loose earth was as good or better than the sand. Other matters might be mentioned but these suffice to illustrate the point.

Defendant asked and received this instruction:

"The court further instructs the jury that if you find and believe from the evidence that the best quality of twenty-four-inch hard-burned, salt-glazed, vitrified clay pipe, laid in the manner prescribed in the contract between defendants Herman Ruecking and Frederick Eistrup and the plaintiff, were insufficient, too weak or inadequate for the purposes for which the same were intended by the contract, and that the broken and cracked condition discovered by plaintiff or its agents on or about August 8, 1904, was due to the condition of said pipe so specified, and that said materials were furnished *and the work done substantially as provided by said contract,* then your verdict must be for the defendants."

We have underscored the language to which plaintiff objects.

Plaintiff asked a general instruction covering the case, which wound up by telling the jury that if they should find the facts to be as rehearsed and set forth in such instructions then they should find for plaintiff.

To this instruction the court added the following clause: "Unless you find and believe from the evidence that notwithstanding the neglect and omission of any of the requirements mentioned above, the defendants did said work in substantial and workmanlike manner in substantial conformity with the plans and specifications on file for the same."

It will thus be seen that the battle *nisi* was waged on the question as to whether or not "substantial performance" was a valid defense under a contract of this kind. The jury found that there was substantial performance. Two questions arise on the record, (1) whether the doctrine "substantial performance" as a matter of law has a place in a contest over a contract of this kind, and (2) whether or not under the admitted fact that dirt had been used instead of sand, ought the court to have said under the evidence that there was no substantial performance as a matter of law, notwithstanding the doctrine of substantial performance should prevail.

That the doctrine of "substantial performance" as to contracts of this character prevails in this State, we think there is no question. Dillon, Municipal Corps., sec. 812; St. Joseph v. Anthony, 30 Mo. 537; Cole v. Skrainka, 105 Mo. 303; Steffen v. Fox, 124 Mo. 630; Johnson v. Duer, 115 Mo. 366; Asphalt Paving Co. v. Ullman, 137 Mo. l. c. 570; Whitworth v. Webb City, 204 Mo. 579; Porter v. Paving Co., 214 Mo. 1.]

Speaking of the more liberal doctrine in Missouri in 2 Dillon on Municipal Corporations, at section 812, it is said: "In Missouri, in actions to *recover the amount charged against a lot for local improvements in front thereof,* the liberal doctrine is adopted, that a *substantial compliance* with the law is sufficient, and it is not necessary for the city to prove a strict compliance with directory ordinances on the subject, but the lotowner or defendant may show a neglect of

duty by the authorities, and if he was injured thereby, it will constitute a defense. If the work has been done in a manner satisfactory to the corporation, and has been accepted by it, a prima facie case is made out.''

The present sewer is one paid for in taxbills, and its construction was supervised by the proper city authorities. According to the evidence each joint of tile was inspected, and the unsound ones rejected. These details, however, we take up more fully under another question urged. But it should be here remembered that this action is by the city upon this contract. It is not one by an adjoining property owner to cancel the taxbills, but it is by the city upon a contract made between itself and the construction company.

In this court the matter was thus mentioned by BURGESS, J., in the recent case of Whitworth v. Webb City, 204 Mo. l. c. 601:  ''All cases relied upon by defendant were suits between the city and a third party to enforce a lien for improvements, under statutes which, because of their special character, are strictly construed; or actions against the city upon a contract which was invalid. In the case at bar the contract sued on was between parties capable of contracting with respect to the subject-matter thereof, and the same rule does not apply as that which obtains in cases for the enforcement of a special lien against property for street improvements. In this class of cases a substantial compliance with the ordinance, contract and specifications, is all that is required.'' In the Whitworth case the city was paying for the sewer without recourse to taxbills.

Likewise in the very late case of Porter v. Paving & Construction Co., 214 Mo. l. c. 19, GANTT, J., said: ''We think that the defendant is right in insisting that the test is whether the sewer was completed, and not whether some of the details of the work were not strictly in accord with the specifications and the con-

tract. The city engineer accepted the work and the city issued the taxbills, and while this does not estop the plaintiffs from complaining of the manner in which the work was done under the provisions of the Kansas City charter, we think that it falls far short of showing that the work was not completed within the meaning of the charter as to the issuance of the taxbills.''

In the latter case it was urged that the sewer had not been completed. Among the contentions to this end, a portion of the work was designated. On page 18 of the report cited above the insistence of the property owner is set out thus: ''The main insistence is that the contractor failed to carry out that particular provision of the contract which required that where a sewer is built above the ground and any other foundation than embankment is used there shall be a covering of earth of the construction and sewer built thereon to a height of one foot above the sewer with a width at the top of not less than the greatest external diameter of the sewer. It appeared that in this case instead of laying the sewer pipe on top of a masonry wall it was laid in the wall, the masonry extending above the top sewer pipe. The city engineer testified that the pipe was covered with masonry and for that reason he did not require the earth embankment, as the masonry was much more lasting and much less liable to wash off. And it was also shown that the contractor had the express permission of the city engineer to substitute the masonry over the sewer pipe in lieu of the loose dirt.''

The taxbills were held valid, although there had been no strict compliance with the literal terms of the contract.

So in the case at bar there was much evidence showing that the city authorities inspected the work sued for at every step of its construction; that they

knew of the change from sand to loose earth. That evidence also shows that in a wet ditch as this was shown to be the loose earth was better than sand.

BLACK, J., after reviewing our own case in Cole v. Skrainka, 105 Mo. l. c. 309, said: "These cases are sufficient to show that this court has never adopted the extreme view that, in order to recover for these local improvements, the plaintiff must show a literal compliance with all the provisions of the ordinances. Distinction must be made between those matters which affect the substantial rights of the parties and those which are formal or directory. Now, in this case, the proceedings leading up to the letting of the contract are regular and formal. The alleged fatal defect lies in the difference between the ordinance and the contract as respects the depth of the blocks. Is there any real difference?" It was held that there was no substantial failure where the contract said certain granite blocks should be eight-inch in size and seven- and eight-inch blocks were furnished. The earlier cases which we first cited above are cited and quoted from by Judge BLACK in this Skrainka case.

In Steffen v. Fox, 124 Mo. l. c. 635, MACFARLANE, J., uses this language: "A strict and literal compliance with ordinances, and contracts thereunder, prescribing the manner in which public street improvements shall be made, has never been required as a condition to the acceptance of the work by the city or to the validity of the taxbill, for the cost thereof charged against the property of individuals."

We are cited to some language used by Judge GANTT in McGrath v. St. Louis, 215 Mo. l. c. 207, whereat he says: "In short, we think the plaintiffs utterly failed to show any authority in Ittel to vary this contract, and he denies that he had any such, and denies that he ever attempted to exercise such functions, and denies the testimony of McGrath. To hold that these

municipal contracts, which are so carefully provided for in the charter, can be changed by any officer or subordinate would destroy the principle of competitive bidding, which is a prime feature of the charter." Counsel for plaintiff place much stress upon this language, but they apparently fail to consider the nature of the case in which it is used. When the case is considered there is nothing meant by this language which would tend to overthrow the trend of the law of this State toward a liberal construction of these contracts for public improvements. The opinion of the same judge in the Porter case, supra, would so indicate, if the entirely different character of the McGrath case did not so indicate. McGrath was not suing upon a contract, but in tort.

We therefore conclude that "substantial performance" may be pleaded and proven under contracts of this character, and if so there is no error in giving an instruction submitting the question, if there is evidence to justify.

Passing next to the failure to use sand. Taking the Porter case, supra, as an example, it would hardly be called a substantial non-compliance with the contract, when city officials are inspecting the work each day and know how it is being done, and when no fraud or collusion is charged to the parties, and when as in this case practically all the evidence shows that owing to the character of the ditch, the dirt was better. The ditch was a wet one and the evidence tends strongly to show that the sand was wisely dispensed with in this case. Nor are the damages found to have been occasioned to the pipes shown to have resulted from this failure.

We hardly think that as a matter of law the court should have held this failure to be fatal under the evidence and therefore no error in submitting the whole case to the jury

II. The latter question above discussed was presented to the jury by the following instruction given at the instance of the defendant:

"The court instructs the jury that even if you find and believe from the evidence that in laying the sewer referred to in this cause, the defendants did not use sand, but instead of sand used fine earth, that fact alone will not entitle the plaintiff to recover in this case, unless you further find and believe from the evidence that the defective condition of said sewer which plaintiff claims to have discovered in August, 1904, and which it claims to have repaired, was directly occasioned by such failure on defendants' part to so use sand."

And by one of the plaintiff's instructions which the court modified, which when modified, read: "The court instructs the jury that neither the street commissioner, nor any of his agents, nor any other officer or servant of the plaintiff city had any authority to change the provisions of the contract in evidence so as to permit or authorize the defendants Ruecking and Eistrup to substitute for the best quality of hardburned, salt-glazed vitrified clay pipe, any pipes which were of any other quality, nor so as to permit or authorize said defendants to perform the work of laying said pipes in any other way or manner than according to the provisions of the said contract, or in substantial compliance with the same."

The one requested by plaintiff of which the foregoing is a modification by the court omitted the doctrine of "substantial compliance" discussed in our first paragraph.

When it is considered that the action of the plaintiff is one to recover damages for having to remove and replace a part of the tiles which were found broken, we think these instructions cover the law of the

232 Sup—22

case. The absence of the sand was not shown to be a cause for the alleged damage. This covers the alleged errors as to instructions. The complaint as to the instructions is confined to the questions we have discussed in these paragraphs, and no further note need be taken of the instructions. In our judgment the case was properly submitted to the jury and this opinion would end here, but for an important question going to the whole case urged by the defendants, and one additional charge urged in the reply brief of the plaintiff. These we take next.

III. We take the contention of the plaintiff first. Defendants maintain in the briefs that the suit is bottomed upon paragraph 6 of the contract, which reads:

"The contractor, when directed by the sewer commissioner, shall remove, rebuild, and make good, at his own cost, any work which the latter decides to be defectively executed; and omission to condemn work at the time of its construction shall not be construed as an acceptance of defective work, and the contractor will be required to correct all imperfect work when discovered, before final acceptance of the work."

Plaintiff claims in the reply brief that it is based upon paragraph 11 of the contract, which reads:

"The sum of two hundred dollars which the party of the first part has paid into the treasury before executing this contract, in accordance with section 1871 of Revised Ordinance No. 19991, approved April 3, 1900, shall be used as a special fund for making repairs in the manner hereinafter provided.

"If at any time within twelve months after the completion and acceptance of the work herein contracted for, the said work, or the surface of any street, alley or public place on the line thereof, shall (in the judgment of the street commissioner as to the street, alley or public place, and of the sewer commissioner

as to the work) require repairs, the sewer commissioner shall notify the contractor to make the repairs required. If the contractor neglects to make such repairs within three days from the date of the service of such notice, the sewer commissioner shall cause the repairs to be made, in any manner as he deems best, and the whole cost thereof, both for labor and materials, shall be paid out of the special fund before mentioned. This fund shall be kept up to the full amount of two hundred dollars, and the remainder finally repaid in the manner set forth in the two following sections of the said Revised Ordinance.''

The petition pleads two ordinances, but nowhere mentions ordinance No. 19991, which is mentioned in paragraph 11 of the contract, supra. Neither does the petition speak of a trust fund as spoken of in said paragraph. Not only is there no pleading of this ordinance, but there is no proof of it. It is therefore evident that this was not the section of the contract sued upon. We have taken the pains to examine the said ordinance for our own satisfaction. This ordinance was the revised code for the city of St. Louis which was passed by way of Ordinance No. 19991, and approved April 3, 1900. [See preface of Eugene McQuillin, to the Municipal Code of St. Louis for year 1901.]

Section 1871 reads: ''Before a contract awarded by the board of public improvements for any work which is to be paid for by special tax, is executed, the bidder to whom the award has been made shall be required to pay into the treasury the sum of two hundred dollars, without regard to the number of his contracts, as a special fund to be used by the commissioner under whose charge the work is to be done, to defray expenses of necessary repairs on the work, if said contractor shall be liable under his said contract or contracts, and which repairs said commissioner shall order made by reason of a failure of said contractor

to make such repairs himself within the time specified by said commissioner."

This paragraph 11 of the contract also speaks of the two following sections of the said ordinance. These sections (1872 and 1873) read:

"Whenever the whole or part of said two hundred dollars shall have been expended for the purpose described in section one thousand eight hundred and seventy-one, the president of the board of public improvements shall notify said contractor to pay so much money into the treasury as will bring the fund again up to two hundred dollars; and until he shall have complied with said notice from the president of the said board, no new contracts for special tax work shall be awarded him, nor shall any special taxbills be delivered to him.

"Whenever such contractor shall cease to be contractor for special tax work, or to be responsible under any of his contracts for repairs on special tax work done by him, the president of the board of public improvements shall certify this fact to the auditor, and, on presentation of such certificate, the auditor shall draw his warrant on the treasurer, in favor of said contractor, for the whole amount standing to the credit of the special fund created by the payment of said contractor, in accordance with the provisions of sections eighteen hundred and seventy-one, and eighteen hundred and seventy-two, and shall take his receipt therefor, in full of all claims against the city on account of said payments."

It cannot be said that this action is based upon paragraph 11 of this contract. We have gone beyond the ordinary rule to go into ordinances not pleaded nor proven, but counsel were so persistent in their claims, that a sufficient excuse is furnished therefor. There is therefore absolutely no merit in this contention of the plaintiff.

IV. Defendants claim that the city, having accepted the work finally under paragraph 6 of the contract and having issued the taxbills, is estopped from bringing this action. If the action is not based upon paragraph 11 of the contract, and we feel satisfied that it is not so based, then in our judgment this contention is true, unless collusion or fraud is alleged and shown as between the agents of the city and the contractor. These two paragraphs of the contract are the only ones we are cited to as controlling the situation, and the only ones we find .directly in point. There are others which shed light thereon.

Paragraph three reads: "The contractor shall commence the work at such points as the sewer commissioner may direct and conform to his directions as to the order of time in which the different parts of the work shall be done, and to all his instructions as to the mode of doing the same."

Paragraph four reads: "Whenever the contractor is not present on the work, orders will be given to the superintendents or overseers who may have immediate charge thereof, and shall by them be received and strictly obeyed. If any person employed on the work shall refuse or neglect to obey the directions of the sewer commissioner, or his duly authorized agents, in anything relating to the work, or shall appear to the said commissioner to be incompetent, disorderly or unfaithful, he shall, upon the request of the said commissioner, be at once discharged, and not again employed on any part of the work."

Paragraph eight reads: "To prevent all disputes and litigations, it is further agreed by the parties hereto that the sewer commissioner shall, in all cases, determine the amount or quality, or the classification of the several kinds of work or material which are to be paid for under this agreement, and that he shall decide all questions which may arise relative to the exe-

cution of this agreement, and his estimates and decisions shall be final and conclusive.''

Paragraph six we have set out in full in a preceding paragraph of this opinion. Other portions of this long and complex contract might be quoted, but they all tend to show that the city retained and maintained a constant and thorough supervision of the work under contracts of this kind. By the evidence it was shown that the work was thoroughly inspected and supervised. By paragraph four it is provided that in giving the orders under paragraph three, supra, if the contractor was not present the city officials could give their directions to the party or parties in immediate control of the work for the contractor and such orders ''shall by them be received and strictly obeyed.'' Further in paragraph four it is further provided that if such person or persons refuse to obey the orders of the city officials, or if any person employed upon the work appear to the city agents to be incompetent, the contractor upon request must discharge such employee and not thereafter use him upon such work. All these things tend to show the absolute control retained by the city over the work. Other provisions provide for the testing of materials by the city authorities in charge.

Now, reverting a moment to paragraph six of the contract, it clearly refers to matters and things to be done ''before final acceptance of the work,'' and not to happenings after the acceptance. The paragraph, as will be seen from a reading of it, supra, closes with the words last quoted.

It is not disputed that there was a final acceptance of this work by the city and it is not charged or intimated either by petition or proof that there was fraud or collusion as between the agents of the city and the contractor. To our mind under paragraph six of the contract the city is precluded of an action for things happening after the final acceptance. The ac-

ceptance is final as to the matters mentioned in clause
six of the contract, supra, and this suit is not under
paragraph or clause eleven thereof. The city ratified
the acts of its agents in permitting the change from
sand to dirt by accepting and paying for the work.
Even though the slight change made was beyond the
purview of the powers of the agents, yet where the
unauthorized act is along the line of a business fully
authorized by law and statute, the acceptance, with
knowledge, binds the corporation. Of the bona fide
acts of honest agents, the city has knowledge through
the knowledge of its agents.

In 1 Dillon on Municipal Corporations (4 Ed.),
section 463, it is said: ''A municipal corporation may
ratify the unauthorized acts and contracts of its agents
or officers, which are within the scope of the corporate
powers, but not otherwise. Ratification may frequently
be inferred from acquiescence after knowledge of all
the material facts, or from acts inconsistent with any
other supposition. The same principle is applicable
to corporations as to individuals.'' This doctrine was
quoted and approved by this court in Aurora Water
Co. v. Aurora, 129 Mo. l. c. 583.

The city in this case should not be permitted to
stand present through its agents and officers and per-
mit and sanction such a change as this in a contract,
and thereby occasion the expenditure of large sums of
money, accept the work, and then afterward under-
take to hold the defendants liable. Nor should the city
have an inspector examine each tile and place the city's
stamp of approval or disapproval upon it and then
afterward be permitted to say that it did not come up
to contract. What is here said as to the tiling need not
be said perhaps for the full disposition of the case,
for the jury found that they did come up to the con-
tract.

Of course, had the petition charged fraud and collusion between the contractors and the city's agents, then such fraud would vitiate the acceptance and destroy its force and effect.

We are fully satisfied that the city made no case either in fact or law. The judgment *nisi* is affirmed.

## IN BANC.

GRAVES, J.—The foregoing opinion, written in Division One of this Court, is adopted as the opinion of the Court in Banc. *Kennish, Ferriss* and *Brown, JJ.,* concur; *Lamm, J.,* concurs in result; *Valliant, C. J.,* and *Woodson, J.,* dissent.