Dwight SCHANK and Joanna Schank,
Appellants,

v.

CLARKSON CONSTRUCTION COMPANY,
a corporation, Respondent.

R. P. CARROLL, Appellant,

v.

CLARKSON CONSTRUCTION COMPANY,
a corporation, Respondent.

F. J. MANEY, Appellant,

v.

CLARKSON CONSTRUCTION COMPANY,
a corporation, Respondent.

J. H. MANEY, Appellant,

v.

CLARKSON CONSTRUCTION COMPANY,
a corporation, Respondent.

Mrs. C. C. HESS, Appellant,

v.

CLARKSON CONSTRUCTION COMPANY,
a corporation, Respondent.

Nos. 23473–23477.

Kansas City Court of Appeals.

Missouri.

June 3, 1963.

Thaine Q. Blumer, Blumer & Wright, Kansas City, for appellants.

Morrison, Hecker, Cozad & Morrison, Karl F. Schmidt, Kansas City, for respondent.

MAUGHMER, Commissioner.

Plaintiffs, Dwight and Joanna Schank, were lessees of a 240 acre Missouri River bottom farm located in Holt County, Missouri. The other plaintiffs were the owners of the farm and lessors under a share-crop rental lease. They brought five separate lawsuits against the defendant Clarkson Construction Company, alleging that it negligently performed some water control construction work which caused flooding of the farm with consequent damage to their crops and to the utility of the farm for crop production. These five lawsuits were consolidated for trial by the circuit court and are consolidated on this appeal. The trial resulted in verdicts and judgments for defendant and plaintiffs have appealed.

Pursuant to authority duly vested, the United States Government, through its United States Corps of Engineers, entered into a contract dated November 12, 1957, with defendant under which defendant was to do certain construction, including building of channels, levees and flood control structures in the vicinity of Napier, Missouri, and along a new proposed channel for the Tarkio-Squaw Creek Drainage. This project was located near and over a part of plaintiffs' land. Its purpose and plan was to improve the drainage in the area and control or lessen the havoc wrought on these bottom lands by flash floods and river overflows.

Actually, only 200 acres are involved in this controversy. This tract is bounded on the east by Squaw Creek, which is the only water outlet from the 8,000 acre Squaw Creek Migratory Waterfowl Refuge, the south part of which lies about one mile north. The drainage in the whole area is generally south. The farm is bounded on the west by Five Mile Road, along the west side of which lies Five Mile Ditch. Plaintiffs had placed two drainage tubes in their northwest corner emptying into Five Mile Ditch and had built levees along the north and south sides of the 200 acres with these levee ditches discharging into Squaw Creek on the east.

One of the charges of negligence is that defendant removed the two drainage tubes on the north side of plaintiff's property, causing water to pile up, thereby raising the water level on the 200 acres. A second charge is that defendant closed the ditch along the north; third, defendant opened up the levee on the south, and fourth, that defendant plugged up the drainage from Penny Lake on the north to Five Mile Ditch. However, plaintiffs joined and approved this project and signed an agreement releasing 32 acres of the farm lying along Five Mile Road to Clarkson Construction Company for use in building a levee. The two steel tubes removed were located on these 32 acres.

Although the damages sought were allegedly caused by flooding during the year 1958, our acquaintance with this farm under the evidence begins in 1933, when it was owned by a Mrs. Maney. She died in 1943 and the present owners are her sons and daughters—natural and in-law. It appears that no farming operations were carried out on this land from 1938 to 1955. During this period the buildings were taken away or destroyed and the whole area grew up in willows.

From 1955 on, the plaintiffs Mr. and Mrs. Schank were lessees. They embarked on a program to reclaim the land. Bulldozers pushed out the trees, a levee was dug along the north and south line and drainage tubes were installed. Dr. Carroll, one of the plaintiffs and a son-in-law of Mrs. Maney, said he had advanced $9,000 for this work. Some crops were harvested in 1955 and 1956, but none in 1957 and 1958, except some corn was salvaged after the 1958 floodings of February and May.

This Schank farm, according to the Department of Agriculture and University of Missouri survey map, is located in an area formerly described as "Impassable Lake". Soil maps describe its soil as "swamp" and "salt marsh". The Holt County Agricultural Extension agent said the soil was predominantly "Wabash Clay, ponded phase", which means the soil holds water on top rather than allowing it to sink in. The soil survey map, supra, gives the following description of "Wabash Clay, ponded phase": "This phase, one of the most extensive bottom land soils in the county, occupies the lowest position in the flood plain along the Missouri and Nodaway rivers. The largest area is in a marsh formerly known as Impassable Lake". Beginning in 1955, Mr. Schank leased a part of the farm to duck hunters, who dug a well, installed a pump and flooded a few acres to attract ducks.

Defendant began work under the contract on November 22, 1957. It began south of plaintiffs' farm and worked north. Five Mile Ditch was widened and deepened. The two tubes of plaintiffs running into Five Mile Ditch were removed but temporary smaller ones under the road were inserted. The contract and over-all plan provided that after construction of the levee a drainage structure was to be built in the northwest corner of the Schank farm consisting of a 36-inch pipe with a concrete controlling gate which could be shut off during high water and opened by gravity flow during low water. The Corps of Engineers' work schedule called for starting this concrete work in June, 1958. Work on the whole project continued—subject to stoppages due to inclement weather—until March 25, 1958, when the government issued its "Stop Order"[1], which directed immediate suspension of all work under the contract. No further work was done until May 9, 1958, when a "Restoration Order"

was issued under which the whole project was to be restored to the same condition as it was in prior to November 22, 1957. It was conceded that restoration was completed in due time thereafter. However, the farm flooded again in 1959 after the restoration. There was a heavy snowfall in January or February, 1958, exceeding 10 inches which melted in late February. The spring was unusually wet. The farm flooded in late February or March and again in May, 1958.

On appeal plaintiffs make two assignments of error. First, that the court erred in refusing to admit into evidence before the jury Section 9.06 of the contract between defendant and the United States Corps of Engineers as follows: "Diversion of Water. Full responsibility for the diversion and care of water, during the entire construction time, shall be borne by the contractor". Second, the court erred in giving Instruction No. 5, because it "was misleading and confusing because it singled out and commented on defendant's duties under its contract with the Corps of Engineers when said contract was not before the jury; that it was confusing and misleading in that it directed the jury to find the terms of a contract not in evidence before them; that said instruction amounted to a direction on the part of the court that defendant could not be liable if it performed its contract, when the test for the jury was the negligence of the defendant". We set forth Instruction No. 5:

"The Court instructs the jury that if you find and believe from the evidence that defendant removed a drainage tube from the northwest corner of plaintiffs' farm and plugged up the drainage from Penny Lake to Five Mile Ditch at that point, if so, and that defendant dug an opening in the levee at the southwest corner of said farm,

[1] "Under the provisions of the referenced paragraph, you are hereby directed to suspend all operations in connection with work under the contract as of the be-

ginning of business this date. J. P. Barnes, Major Corps of Engineers, Accounting Officer".

if so, yet if you further find and believe from the evidence that defendant Clarkson Construction Company on November 12, 1957, entered into Contract No. DA–23–028CIVENG–58–160 with the United States Corps of Engineers providing for the construction of the drainage ditch and levees referred to in the evidence and said contract, if so, and that said contract was entered into pursuant to validly conferred governmental authority, if so, and if you find that the removal of the drainage tube from the northwest corner of plaintiffs' farm, the plugging up of the drainage from Penny Lake to Five Mile Ditch at that point and the digging of the opening in a levee at the southwest corner of said farm was performed by Clarkson Construction Company in accordance with said government contract, if so, and at the direction of the United States Corps of Engineers, if so, and if you further find and believe that all of the work done pursuant to the performance of the aforesaid contract was completed without negligence on the part of defendant Clarkson Construction Company, if so, then your verdict will be for the defendant, Clarkson Construction Company, even though you also find and believe that the performance of said contract resulted in incidental or consequential damage to any or all of the plaintiffs".

The Supreme Court of Missouri in Evans v. Massman Const. Co., 343 Mo. 632, 122 S.W.2d 924, 930, 931, declared certain legal principles which are applicable to this type of litigation. In that case plaintiff, a farmer, sought damages against a contractor for overflow allegedly caused by defendant's negligence in construction of a dike which was built in a river, under a contract between defendant and the United States Government or Corps of Engineers. The judgment for plaintiff was affirmed by this court, but reversed outright by the Supreme Court. We quote in part from that opinion:

"There is no evidence at all in this case that the defendant extended the dike in question beyond the point designated by the United States engineers and government inspectors. The contract, par. 34 (Modifications) and Art. 3 (Changes) authorized the government to make changes in the specifications and in the execution of the work. Therefore, even though no screen or fender mat was specifically provided for in this contract as written, yet since such a mat was put on this dike and accepted and paid for by the government, it stands admitted that the government either ordered and directed the screen mat to be put there before it was actually placed there, or that the government approved its installation afterwards by inspecting, accepting and paying for it. In either instance, the placing of the screen mat was not done in violation of the contract between the government and the defendant. Crisp County, Georgia et al. v. S. J. Groves & Sons Co., 5 Cir., 73 F.2d 327, 96 A.L.R. 391; City of St. Louis v. Ruecking, 232 Mo. 325, 134 S.W. 657. There is no evidence at all tending to prove that the defendant was in any way negligent in the actual construction or installation of the screen mat. Therefore, whatever effect the length of the dike or the screen mat had on the water of the river at this dike or above or below it was not chargeable to the defendant but was a matter for which the government alone is answerable. (citing authorities).

\*   \*   \*   \*   \*   \*

"The government had a right to improve the river and the government had a right to hire somebody to do the work for it and any errors or mistakes made by the government in the plans or in the direction of the work to be done by the defendant thereunder cannot afford a basis for plaintiff's recovery from the defendant. Salliotte v. King Bridge Co., 6 Cir., 122 F. 378, 65

L.R.A. 620; Bedford v. United States, 192 U.S. 217, 24 S.Ct. 238, 48 L.Ed. 414. The defendant took the plans as handed to him and proceeded to execute them under the direction of the United States engineers, which he did to the total satisfaction of the government and the government paid him in full for his contract. We, therefore, conclude that there was a total failure of any substantial evidence in the case from which a jury could find negligence on the part of the defendant in the performance of his contract with the government and that the plaintiff, therefore, failed to carry the burden of proving an essential element of his case.

\* \* \* \* \* \*

"This is not a case of concurrent negligence because the government is not liable to plaintiff for anything that it did and the defendant is not chargeable with any negligence or bad planning on the part of the government, so the question here is simply one of singular negligence, and unless the evidence shows that defendant's negligence is responsible for the damage, then defendant must be released. It is not at all similar to the cases where two parties are negligent in causing a damage and in which event either or both of the tort-feasors are liable to the injured party."

Paragraph One of plaintiffs' petitions contains this allegation: "that at all times herein mentioned defendant was engaged in the performance of a certain contract with the United States Corps of Engineers building a levee adjacent and adjoining the *east* side of plaintiffs' farm lands herein mentioned; that all of the negligent acts and omissions hereinafter complained of were committed by defendant's agents, servants and employees, acting within the course and scope of their employment \* \* \*". This allegation was admitted under defendant's pleadings.

Plaintiffs rely upon Rector et al. v. Tobin Const. Co., Inc., Mo.App., 351 S.W.2d 816. In that case plaintiff's claim for damage was based upon flooding allegedly caused by defendant contractor's construction of a "fill". The appellate court (Syllabus 6) merely held that—"State sovereignty did not immunize contractor from liability for flood damage from fill placed across river bed by contractor working under contract with State Highway Commission, where fill was not called for by the contract, nor directed by Commission or paid for by it". We quote (pp. 820–821 of 351 S.W.2d) from this opinion:

> "These cases follow the rule generally accepted that the contractor shares the immunity of the sovereign when his work *is done at and within the direction of* the sovereign's agent, such as the Highway Department." (Italics ours).

If it were not already understood that the sovereign or government is not liable for damages incurred by construction of dikes, levees and dams, the above quotations make it abundantly clear. From these opinions we understand too, that a contractor who carries out such a plan under contract with the Corps of Engineers is likewise immune unless guilty of singular negligence or careless performance in the construction itself. This is true so long as the contractor adheres to and abides by the contract and his construction activities are held to be in conformity with the contract if (a) what he does is spelled out in the original contract; (b) if what he does is later approved by the engineers and (c) if it is paid for by the government.

As to plaintiff's first assignment, the contract was in evidence before the court. We would, if necessary, take judicial notice of the fact that it is a lengthy, technical document couched in engineering and legal phraseology. It would serve no useful purpose and might confuse if the particular

excerpt were given to the jury for interpretation and application.

Mr. Charles Perry, area engineer and supervisor of this particular project, testified that defendant's construction activities were provided for by the contract, were approved by him, were paid for by the government and that defendant performed as directed, including obeying the "Stop Order" and proceeding under the "Restoration Order". Instruction No. 5 embraces the law in this type of case and submits the issue of singular negligence to the jury. As stated by the court in Johnson v. Thompson, 241 Mo.App. 1008, 236 S.W.2d 1, 9:

> "It is the duty of the court to interpret the rights of the parties under this contract of employment as a matter of law and to tell the jury what facts they should find in determining whether or not any of the causes mentioned in the contract had been shown by the defendant in its evidence".

■ We hold that the court did not commit reversible error in refusing to submit Section 9.06 to the jury or in giving Instruction No. 5.

Respondent urges that its motion for directed verdict should have been sustained because plaintiffs offered no substantial evidence that the negligence, if any, of Clarkson was the proximate cause of the alleged damage. It is evident from the pleadings and from the evidence that the alleged acts of negligence complained of were done by defendant acting under its contract with the government or at least not in violation of it. While the defendant and Schank opened a "plug" from Penny Lake which was outside the actual confines of the project and defendant built a road on the south for the convenience of residents in that area and this road was off the right of way, those acts had at least the tacit approval of the project engineer and there is no proof that such acts were the proximate cause of the flooding of March or May, 1958, or of the 1959 flooding. The fact that in 1959, after

the drainage conditions had been restored as they existed prior to November, 1957, (which was conceded by plaintiff Schank) would raise grave doubt that the government work was the proximate cause of the flooding in 1958 or in 1959.

■ However, we need not rule as to whether or not defendant's motion for directed verdict should have been sustained. The issue of singular negligence was submitted to the jury and the verdicts were for defendant. The judgments entered thereon should stand.

The judgments for defendant as entered in each of the five cases are affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the Court.

All concur.