AMERICAN INDEMNITY COMPANY, A Corporation, Appellant,

v.

Anna SWARTZ, Executrix of the Estate of Morton M. Swartz, Deceased, Albert Swartz, Milton Swartz and Herbert Neal Swartz, d/b/a Kallis & Swartz, Appellees.

No. 15747.

United States Court of Appeals Eighth Circuit.

Dec. 24, 1957.

**534**

William A. Rundle, Jr., Kansas City, Mo. (Henry W. Buck and Morrison, Hecker, Buck, Cozad & Rogers, Kansas City, Mo., on the brief), for appellant.

A. J. Granoff, Kansas City, Mo. (Loeb H. Granoff, Kansas City, Mo., on the brief), for appellees.

Before GARDNER, Chief Judge, and WOODROUGH and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by defendant, American Indemnity Company, from a final judgment against it, awarding plaintiffs full recovery upon a robbery loss upon the basis that said loss was insured by the defendant, and awarding plaintiffs damages and attorney's fees by reason of vexatious delay in the payment of the loss.

This case was tried to the court without a jury. Jurisdiction based upon diversity of citizenship and the requisite amount is established. Much of the evidence is stipulated. We summarize the material facts.

Plaintiffs are members of a partnership engaged in the retail grocery business at four separate locations in Kansas City, Missouri. It is undisputed that the defendant had executed and delivered to the plaintiffs its Money and Securities Policy, and that such policy was in force at the time of the robbery loss here involved. So far as material, the policy provides:

"Declaration 3.

"Not more than one messenger while outside the premises will have custody of the insured property at any one time, except as herein stated:

"Four—limited by endorsement No. 2.

\*　　\*　　\*　　\*　　\*　　\*

"Insuring Agreement II. *Loss Outside Premises.*

"*To Indemnify the Insured* (a) for all direct loss of money and securities occurring outside the premises and caused by the actual destruction, disappearance or wrongful abstraction thereof while being conveyed by a messenger within any of the States of the United States of America, the

District of Columbia, Alaska, Hawaii, Canada or Newfoundland; and (b) for all direct loss of or damage to property other than money and securities, caused by robbery or attempt thereat outside the premises while such property is being conveyed by a messenger within the aforesaid territorial limits.

\* \* \* \* \* \*

"Endorsement No. 2

"Burglary—Plate Glass

General Change Endorsement

Schedule Insuring Agreement II

"In consideration of the premium charged for Insuring Agreement II of this policy it is hereby agreed that the insurance granted by Insuring Agreement II is limited to apply and cover \* \* \*."

The limit of coverage on the various stores, using the plaintiffs' store numbering, is: No. 1, $4,000; No. 2, $2,500; No. 3, $1,500; and No. 4, $1,000. As to Store No. 1, the policy required "One Bank Messenger Accompanied by a Guard," and as to the other stores "One Office Messenger." The terms "messenger" and "guard" are defined in the policy. Since defendant concedes that plaintiffs' messenger, Margaret Coleman, met the messenger definition ,and Russell Peters met the guard definition, it is unnecessary to consider such definitions.

On July 16, 1954, Milton Swartz, a member of the partnership, acting within the scope of his authority, drew at Store No. 2 four separate checks totaling $4,-000, a check being drawn against each of the four separate bank accounts maintained by the individual stores. Checks were drawn against the individual store accounts as follows: Store No. 1, $1,000; Store No. 2, $1,000; Store No. 3, $1,500; and Store No. 4, $500. These checks were all within the coverage limit applicable to each of the stores. Swartz delivered the four checks to Margaret Coleman, an employee of the plaintiffs, working primarily at Store No. 2, and instructed her to take the checks to the bank and cash them, and to deliver the proceeds of each check to the store upon which the check was drawn. Russell Peters, a male employee, was directed to drive and accompany Miss Coleman. The stipulation provides in part:

"11. At all times relevant hereto, the said Margaret Coleman and Russell Peters were in the immediate physical presence of each other; after entering the Southeast State Bank together, Miss Coleman presented the four checks aforesaid to the teller who, in return, handed her four separate bags of cash, each containing large quantities of coins, which, as each bag was handed to her Miss Coleman in turn placed in one large cloth bag or sack held by the said Russell Peters.

"12. The said Margaret Coleman and Russell Peters then proceeded from the bank together, Peters at all times carrying the large sack of money. After reaching the panel truck which they had parked in a public parking lot immediately adjacent to the bank, Peters opened the door on the driver's side, placed the sack of money on the seat and proceeded to get in when, without warning and from behind, he was violently assaulted by an armed bandit who had concealed himself in the rear of the vehicle. At the same time, the said Margaret Coleman, who was about to enter the panel truck from the passenger side, was violently assaulted from behind and struck on the head by a second assailant from outside the vehicle; one of the assailants grabbed the sack of money and both robbers then fled."

The loss of the $4,000 by robbery is not questioned. The judgment in favor of the plaintiffs included full loss of $4,000, less a recovery of $78.36, plus interest, plus the award of 10 per cent of the principal for vexatious delay and $500 attorney's fees.

Defendant relies upon the following alleged errors for reversal:

I. The Court erred in overruling defendant's motion for judgment at the

close of all the evidence because the evidence disclosed that at the time of the robbery the money was not being conveyed by an authorized messenger and thus there was no compliance with Insuring Agreement II of the policy.

II. The Court erred in granting judgment for any amount in excess of $2,500 because the transaction originated from Plaintiffs' Store No. 2 which carried scheduled coverage under the policy of $2,500.

III. The Court erred in granting judgment for vexatious delay and attorney's fees.

 Findings of fact of a trial court in a nonjury case should not be set aside unless they are without substantial evidentiary support, unless they are against the clear weight of the evidence, or unless they are induced by an erroneous view of the law. Pendergrass v. New York Life Ins. Co., 8 Cir., 181 F.2d 136, 137; Commercial Standard Insurance Co. v. Maryland Casualty Co., 8 Cir., 248 F.2d 412. The burden is upon the appellant to demonstrate error. To obtain a reversal the appellant must show that the conclusion reached by the trial court as to the interpretation of the contract is irrational, illogical, unsound, or contrary to any local or general law applicable to the interpretation of an insurance contract. Grundeen v. United States Fidelity & Guaranty Co., 8 Cir., 238 F.2d 750, 753.

Keeping the foregoing standard of review in mind, we proceed to the consideration of the asserted errors in the order above stated.

 I. The policy here involved indemnifies the plaintiffs for loss by robbery of money being conveyed by messenger. Defendant's contention is that the messenger was not conveying the money at the time of the robbery. We hold that such contention is without merit. The stipulated facts relative to the robbery have heretofore been set out. The money at all times after it was received from the bank and up to the time of the robbery was under the constant observation of the authorized messenger, Miss Coleman, and was within her reach. At the instant of the robbery the funds were on the car seat as Miss Coleman opened the car door. We are satisfied that under the undisputed facts Miss Coleman's participation in the conveying of the money was sufficient to support the trial court's finding that the policy terms with respect to the custody and conveying of the funds by the messenger had been fully met. There is testimony that some of the money consisted of coins and that the bag containing the $4,000 was heavy. We do not believe that the policy made it mandatory that the messenger personally carry the money. The same words "being conveyed by a messenger" are used in Clause (b) of Insuring Agreement II, heretofore quoted. This clause covers robbery of property other than money or securities. The property covered by such Clause (b) would include the general run of merchandise handled by grocery stores while in transit. It is not reasonable to suppose that the parties intended to require that the messenger actually hold or carry such insured property. We believe that the same interpretation should be given to the same words used in connection with money, as both the money and the other securities are covered by the same Insuring Agreement II. In any event, at the moment of the robbery the money had come to rest upon the seat of the conveying automobile and was within sight and reach of the messenger, Miss Coleman.

Defendant cites a number of cases to the general effect that, absent ambiguity, there is no room for construction, and that words must be given their ordinary meaning. We believe that the trial court properly applied this principle.

Defendant relies particularly upon J & C Drug Company v. Maryland Casualty Company, Mo.App., 298 S.W.2d 516. There, as here, the indemnity applied while the money was being conveyed by messenger. In the cited case the messenger was an officer of four drug companies. He started for the bank with the receipts of three of the stores, and

temporarily deposited such receipts in a locked safe in the fourth store while he did some work in such store. He intended to make the deposits later. The robbery occurred in the fourth store while the funds were in the safe. The court held that the funds lost in the robbery were not covered by the insurance as they were not being conveyed at the time of the robbery and the officer was not acting as a messenger at such time. The cited case is readily distinguishable from our present case. Here, the messenger was at all times material in the process of carrying out the duty of conveying the money. Guarisco v. Massachusetts Bonding & Ins. Co., 167 Misc. 875, 4 N.Y.S.2d 788, 790, relied upon by the defendant, is also distinguishable as there the policy requirement was "actual care and custody."

II. Defendant next contends that in any event the recovery should be limited to $2,500. Defendant asserts that its policy provides for scheduled insurance, not blanket insurance, and that the limit of liability for each store is set out in Endorsement No. 2.

█ Defendant is entirely right in its contention that the maximum scheduled robbery protection on Store No. 2 is $2,500. If the entire $4,000 here involved was being obtained for Store No. 2, clearly the $2,500 recovery limit would be applicable. However, as set out in the stipulation of facts, a separate check was issued against each of the four separate store accounts for the purpose of obtaining cash for each store in the amount of the check issued against such store. Thus, the decisive issue is whether a single messenger can at the same time represent all four stores.

Defendant in its brief states:

"While it is true that the policy nowhere states in express language that one messenger working out of one particular location cannot be considered simultaneously a messenger for other locations, that is both the only construction to be put on the policy and the inherent sense of scheduled coverage."

The pertinent policy provisions have heretofore been set out. Declaration 3 provides that the custody of the insured property shall be in one messenger while the property is in transit. This declaration is amended by the addition of the following typewritten words "Four—limited by endorsement No. 2." The parties agree that the word "Four" means four messengers. Defendant urges that the meaning of Declaration 3, as amended, is to limit the use of one messenger to one store at one time. The trial court rejected this contention, stating:

"As far as defining the effect of the scheduled coverage as distinguished from the blanket coverage, now, I have been through this policy pretty carefully. I can find nothing that says that in order to effectuate the provisions for all the scheduled store coverages there must be a separate messenger for each store. That isn't in the policy. I don't see how by any inference it can be construed to be in the policy. Now, the policy itself, without the endorsement, says only one messenger while outside the premises will have custody of the insured property. That is a partial limitation. It is modified by an endorsement which says that no longer are we requiring that it be one messenger alone but we are now permitting four. It seems to me that under the language that is used, you can have one, two, three or four so long as your stipulated scheduled coverage is in effect. * * *

" * * * There is nothing in there that says there must be a separate messenger for each store in order to get that coverage and the record is complete, as far as Mrs. Coleman is concerned, and as far as the Stipulation is concerned, that she, actually and literally, was acting as a messenger for four different stores, each of the four scheduled coverages. I think there is compliance."

We do not believe that the trial court's construction renders the limitation of risk provision entirely meaningless. There still remains the coverage limit as to each store.

■ It may be conceded that scheduled coverage rather than blanket coverage was intended. This still leaves open the question of whether separate messengers are required by the policy for each store. It would seem that the amendment of Declaration 3 would permit a separate messenger for each of the four stores. However, it does not follow that the use of separate messengers is mandatory. The court gave full consideration to the policy and all endorsements thereto. The court found there was no ambiguity and that under the policy as written the same messenger could act for all stores at the same time. In so doing, we believe the court reached a permissible conclusion under the applicable law.

■■ The rule in Missouri and generally is that if the meaning of words employed is doubtful or uncertain and they are susceptible of two interpretations, one favorable to the insured, and the other favorable to the insurer, then the interpretation favorable to the insured will prevail. Cain v. Robinson Lumber Co., 365 Mo. 1238, 295 S.W.2d 388, 391; Appleman Insurance Law and Practice, Vol. 13, p. 50. If the defendant desired to restrict a messenger from serving more than one store at one time, it could and should have so stated in clear understandable language.

■ III. Finally, defendant urges that the court erred in awarding damages for vexatious delay and in allowing attorney's fees. Such award was made pursuant to Mo.Rev.Stat., 1949, Sec. 375.420, V.A.M.S. Said statute permits the allowance of damages and attorney's fees if an insurance company has "vexatiously refused to pay" a loss due under its policy.

In Jones v. Farm Bureau Mutual Ins. Co., Mo.App., 284 S.W.2d 11, at page 15, the court defines "vexatiously" as follows:

"The word 'vexatiously,' as used in the statute, has been defined by the decisions of this court to mean without reasonable, or probable, cause or excuse."

There are many Missouri cases which have considered the Missouri vexatious delay statute. From the decisions it appears that each case must turn on its own peculiar facts. In some instances the vexatious delay issue was held to be one of fact for the jury. Under other circumstances, it has been held as a matter of law that damages for vexatious delay should be denied. Many of the Missouri authorities setting out the principles to be applied in vexatious delay cases are considered and discussed in New York Life Ins. Co. v. Calhoun, 8 Cir., 114 F.2d 526, 536. The Missouri court has frequently stated that the vexatious delay statute is highly penal and should be strictly construed. Non-Royalty Shoe Co. v. Phoenix Assur. Co., 277 Mo. 399, 210 S.W. 37, 42; Jones v. Farm Bureau Mutual Ins. Co., supra. In World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co., 8 Cir., 169 F.2d 826, 4 A.L.R.2d 523, this court, speaking through the late Judge Collet, a jurist well informed on Missouri law, stated (at page 833):

"The Missouri courts have never construed this statute as justifying a penalty when there was ample ground for an honest difference of opinion as to liability."

The judgment was modified to eliminate damages for vexatious delay and attorney's fees.

In our present case the court, in discussing the vexatious delay issue, states:

"* * * I think if there is a basis, a legal question as to whether or not a company ought to be required to pay or whether or not there is a basic factual question as to whether or not a company ought to be required to pay, then the Court, as a matter of law can declare that there is no basis or foundation for an additional award for vexatious refusal to pay. I can't

quite convince myself that there is a reasonable basis in this case. It seems to be so perfectly apparent on its face that under this scheduled coverage here, by which the policy allocates the basis of the money that was intended for each store, since there is no provision in the policy that justifies a requirement that there be a separate messenger for each store before the policy provisions of the contract enter into it, it seems to me that a refusal to pay under those circumstances is arbitrary. Now, I think 'arbitrary' probably in the first analysis is a better term than 'vexatious,' although the statute does use vexatious. I think for all purposes here the term arbitrary refusal to pay is a better one, although I will concede for the sake of the record that it would have to be construed as being a synonymous term."

As we read the court's opinion, we do not believe that the vexatious delay award was based upon any feeling on the part of the trial court that the refusal to pay was motivated by bad faith on the part of the defendant. We find no substantial evidence of bad faith on the part of the insurer. Payment of the limit of coverage on Store No. 2, in the amount of $2,500, was offered shortly after the loss and was repeatedly tendered thereafter and refused.

■ From the court's opinion, it appears to us that he awarded the damages for vexatious delay because he did not regard the defense interposed by the defendant as substantial. While we have agreed with the trial court's decision upon the main issue, we do not agree with his conclusion that the defense interposed was unsubstantial. We find no evidence to support a conclusion that the defense was not asserted in good faith, and from the record it fairly appears that there was a reasonable basis for an honest difference of opinion on the issue of liability.

We conclude that the court erred in determining the defense interposed by

defendant was unsubstantial and hence erred in awarding damages for vexatious delay and attorney's fees.

■ Plaintiffs have moved this court under our Rule 21(b), 28 U.S.C.A., to award additional damages upon the ground that the appeal was taken merely for the purpose of delay. From what has heretofore been said, it is apparent that such motion should be overruled.

Judgment appealed from is modified by striking therefrom the allowance of damages for vexatious delay and the allowance of attorney's fees, and, as so modified, the judgment is affirmed.