PHOENIX ASSURANCE COMPANY OF NEW YORK, Appellant,

v.

APPLETON CITY, Missouri, et al., Appellees.

No. 16721.

United States Court of Appeals Eighth Circuit.

Dec. 7, 1961.

Clem W. Fairchild, Kansas City, Mo., for appellant. Rodger J. Walsh and Davis, Thomson, Van Dyke, Fairchild & Walsh, were with him on the brief.

Barkley M. Brock, Clinton, Mo., for Appleton City, Mo. Haysler A. Poague, Clinton, Mo., and Poague, Brock & Wall, Clinton, Mo., of counsel, with him on the brief.

James S. Cottingham, Independence, Mo., for appellees Byron B. Crail and American Cast Iron Pipe Co. John S. Newhouse, and Newhouse, Shaffer & Wilson, Independence, Mo., with him on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff Phoenix Assurance Company of New York (Phoenix), a corporate surety writing bonds for compensation, brought this action for declaratory judgment to have its rights and liabilities determined upon a construction bond and a statutory bond it had furnished the City of Appleton City, Missouri (City) on behalf of Reser, d/b/a Continental Construction Company, a contractor who had entered into a written contract to construct a sewage system for the City. The City in a counterclaim and cross-petition asserted that Reser had not completed the contract in accordance with its terms, that the City is entitled to liquidated damages specified in the contract for delay, and to actual damages for the amount necessary to complete the construction,

and asked that plaintiff's liability upon its bonds for such damages be established and allowed. The City also prayed that it be allowed penalties and attorneys' fees pursuant to V.A.M.S. § 375.420, for vexatious delay.

Various parties holding claims for labor and material furnished on the project intervened in the action and prayed for establishment of their claims and for judgment against Phoenix upon its bonds for the amounts found due them.

Final judgment was entered determining that Reser had not substantially performed his contract with the City and that Phoenix was liable on its bonds for liquidated damages for delay, actual damages, penalties and attorneys' fees for vexatious delay. The judgment fixes the amount of such damages. The claims of the intervenors were established against Phoenix. Phoenix has appealed from the final judgment. Jurisdiction is based upon diversity of citizenship.

Phoenix asserts points entitling it to a reversal as follows:

"I.

The trial court erred in entering judgment for the defendant on its cross claim and against plaintiff because the contract itself states that the decisions of the engineer shall be final and conclusive on all parties. * * *

II.

The trial court erred in finding and rendering money judgment against plaintiff on defendant City's counterclaim. * * *

III.

The court erred in finding for the defendant and against the plaintiff on plaintiff's claim for additional sums due from the defendant on account of work performed under the contract. * * *

IV.

The court erred in adjudging that the intervenor Lee Matthews Ma-

chinery and Rental Company recover against plaintiff.

V.

The court erred in allowing interest on the claims of certain intervenors against plaintiff."

Said points will be considered in the order stated.

I.

Phoenix contends that the contract between Reser and the City specifically provided that the decision of the City's engineer was to be conclusive as to all parties upon the question of whether the materials and workmanship conformed to the specifications, and that the city engineer approved and accepted the performance of the contract by his letter to the City dated May 20, 1957.

As a result of a pretrial conference, the parties agreed that certain issues of law be determined by the court, leaving the question of amount of damages that might be due either party for later adjudication. The issues thus submitted, as stated by the court, are:

"(1) Were the regulations of the State Division of Health integrated within the terms of the contract so that approval of the construction by that body was necessary before the project could be complete?

(2) Under the terms of the contract was the governing body of Appleton City required to accept the system as complete, or was approval by its engineer binding upon the city?

(3) If approval by the city engineer, Uri Seiden, was binding on the city, did he, in fact, approve the project?"

The court in a memorandum opinion (not reported), dated March 30, 1959, expresses its views upon such issues. The court treated the submission of the above stated issues as a motion for summary judgment on certain issues of liability alone, as contemplated by Rule 56 (c) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

Upon the first issue, the court found that the State Health Department regulations were not expressly made a part of the specifications or the contract, and expressed doubt whether the standards of performance set out in such regulations constitute part of the contract, but found it unnecessary to determine such issue because of its view that the contract called for acceptance by the governing body of the City, and that the City had never accepted the work.

■ In Missouri and generally, it appears to be well-established that parties to a building contract may agree that a designated person, such as a named architect or engineer, shall determine questions relating to the performance of the contract and the amount due, and that such determination shall be final and conclusive, absent fraud or gross mistake. Martinsburg & Potomac R. R. Co. v. March, 114 U.S. 549, 5 S.Ct. 1035, 29 L.Ed. 255; Kihlberg v. United States, 97 U.S. 398, 24 L.Ed. 1106; United Const. Co. v. City of St. Louis, 334 Mo. 1006, 69 S.W.2d 639; Stiers Bros. Const. Co. v. Moore, Mo.App., 158 S.W.2d 253.

In the cases just cited and in other cases relied upon by Phoenix, the court found that the contracts clearly placed the responsibility for finally determining a disputed issue upon a designated person. Here, the City contends and the court determined that the contract required acceptance by the governing body of the City. Our reading of the contract satisfies us that the contract is ambiguous with respect to the issue of who was to approve the performance.

■ A contract is ambiguous if it is reasonably susceptible of different tenable constructions. Maritz, Inc., v. ACF-Wrigley Stores, Inc., 8 Cir., 283 F.2d 75, 78; Paisley v. Lucas, 346 Mo. 827, 143 S.W.2d 262, 267.

In the Maritz case, supra, we quoted and applied the rules of construction pertaining to ambiguous contracts as stated by the Supreme Court of Missouri in Veatch v. Black, 363 Mo. 190, 250 S.W.2d 501, 507, as follows:

" 'A contract of doubtful meaning will be given a construction which will make it fair and reasonable between the parties and will not give one party an unfair advantage of another. Mecartney v. Guardian Trust Co., 274 Mo. 224, 202 S.W. 1131, 1134(2). "Common sense and good faith are the leading characteristics of all interpretations." Paisley v. Lucas, 346 Mo. 827, 143 S.W. 2d 262, 268(5–7). Consideration is given to the contract as a whole and the fundamental rule for construing its language is to ascertain and give effect to the intention of the parties. Paisley v. Lucas, supra; Larson v. Crescent Planing Mill Co., Mo.App., 218 S.W.2d 814, 819(2). Greater regard is given the clear intention of the parties than the particular words used in attempting to express it. Larson v. Crescent Planing Mill Co., supra; Rickey v. New York Life Ins. Co., 229 Mo.App. 1226, 71 S.W.2d 88, 93. The court considers the relationship of the parties, the subject matter of the contract, the usages of the business, the surrounding facts and circumstances leading up to and attending its execution, and the apparent purpose which the parties were undertaking to accomplish.' "

In American Indemnity Co. v. Swartz, 8 Cir., 250 F.2d 532, 536, we said:

"The burden is upon the appellant to demonstrate error. To obtain a reversal the appellant must show that the conclusion reached by the trial court as to the interpretation of the contract is irrational, illogical, unsound, or contrary to any local or general law applicable to the interpretation of an insurance contract. Grundeen v. United States Fidelity & Guaranty Co., 8 Cir., 238 F.2d 750, 753."

With the foregoing principles of interpretation before us, we look to the facts in our present case. Standing in isolation the portion of the contract relied upon by Phoenix, which reads:

"The materials and workmanship used in the work herein contemplated shall be subject to the inspection of the Engineer, and his decision as to what conforms to specifications shall be conclusive on all parties, and all condemned materials shall be immediately removed from the vicinity of the work."

lends some support to Phoenix's position. However, as the trial court aptly pointed out, the paragraph immediately following reads:

"Failure or neglect of the Engineer to condemn or reject bad or inferior materials shall not be taken to imply acceptance if it shall become evident before the final acceptance by the Governing Body. The issuance of payment for the construction shall indicate final acceptance of the work. However, the Contractor shall be responsible for any failure which may occur within one year of the date of completion."

Phoenix contends that the qualifying paragraph last quoted applies only to defective materials. The contract when considered as a whole leaves us in serious doubt whether the parties intended to treat defective workmanship in a different manner from defective materials.

The opening paragraph of the contract provides that all work and material shall be "to the satisfaction of the engineer and acceptance by the Governing Body of the City." In a later paragraph it is stated that the contractor will complete the work in accordance with the plans and specifications "and to the acceptance of the Governing Body." The trial court in its opinion thus interpreted the contract:

"It is apparent from this that the contractor undertook to complete the project to the acceptance of the governing body of Appleton City. Nothing in the record indicates that the city by formal action or otherwise accepted the system as complete. While one paragraph contains a stipulation that the engineer's decision as to what conforms to the specifications shall be conclusive on the parties, this provision is qualified in the next paragraph by the statement that failure of the engineer to condemn inferior workmanship shall not be deemed to imply acceptance if such defects became evident before final acceptance by the governing body. It follows that the ultimate arbiter was the governing body of the City, and not its engineer; and the work has not been accepted by the City."

We believe that the court reached a permissible conclusion in making such interpretation. We do not believe that such interpretation is irrational, illogical, unsound, or contrary to any local or general law applicable to the interpretation of construction contracts.

There is no evidence that the governing body of the City ever accepted the contractor's performance of his contract. Since the court found that the performance was subject to acceptance of the governing body of the City, it found it unnecessary to pass upon issue (3) above, relating to whether the engineer had in fact approved the contractor's performance. Phoenix, on this issue, relied upon the engineer's letter to the City, dated May 20, 1957.[1] While the first paragraph of the letter does state that certain items of work previously rejected now pass inspection, and does state that the system is ready to re-

1. The May 20, 1957, letter written by the city engineer, addressed to the mayor, reads: "On May 18, 1957 I was in Appleton City and completed inspection of that portion of the system which I rejected on my previous visits. All phases checked passed my inspection this time. It is my opinion that, from an engineering point of view, the system is ready to receive sewage now, and I have, therefore, asked the State Health Department to proceed with their inspection.

"There are, of course, several items of clean up to be done in the City, however, I do not believe that it will be necessary to complete these parts before hooking

ceive sewage, and is ready for the State Department of Health inspection, we do not believe that the letter as a whole on its face indicates that it was intended as a final acceptance of the contractor's performance. The letter clearly indicates that some clean-up work is necessary and that the engineer is in need of some further information to determine the extent of the clean-up required. The clean-up work consisted of the fulfillment of the contractor's obligation to level the streets, repair culverts and road crossings, and pavement and road damage occasioned by his exacavation work. Such deficiencies in performance were clearly apparent and the City was ultimately allowed $4,573.85 for the cost of completing this portion of the contractor's obligation.

It is apparent that a substantial dispute existed as to the amount, if any, due the contractor for rock excavation. It seems very unlikely to us that the contractor would finally accept the work when it was plainly apparent and known to him that some substantial items of work remained unfinished and unsettled. The engineer, Seiden, testified he never advised either the contractor or the City that the contractor's performance of the contract had been accepted and approved. We do not believe that the letter relied upon was legally sufficient to constitute an acceptance of the work performed by the contractor, by the city engineer.

Phoenix makes a further argument that strict performance of the contract was waived by the conduct of the engineer. Phoenix's position on waiver, to the extent it may differ from its claim that the City is bound by the engineer's acceptance of the project, is not clear. Waiver is an affirmative defense which a party must plead. Rule 8(c), Federal Rules of Civil Procedure. We find no pleading of the waiver defense. The court did not specifically rule upon waiver. In any event, as we view the record, the evidence bearing upon insistence upon substantial performance both by the engineer and by the City is strong. We are unable upon this record to say that the court committed any error in failing to find that the City had waived any right to insist upon substantial performance of the contract.

The court recognized that under Missouri law a strict and literal compliance with the terms of the contract is not required, and that the City would be required to accept the improvement if the contractor has substantially complied with the construction contract. See City of St. Louis v. Ruecking, 232 Mo. 325, 134 S.W. 657; Whitworth v. Webb City, 204 Mo. 579, 103 S.W. 86; Steffen v. Fox, 124 Mo. 630, 28 S.W. 70.

By order of court entered pursuant to stipulation of the parties, the following issues were referred to a Special Master, pursuant to Rule 53:

1. The issue of substantial performance of the contract.

2. All fact issues relating to the amount of damages claimed by the parties.

All parties waived a jury trial and consented to the trial of such issues by a Master, and likewise stipulated for the appointment of Haskins, Riddle and Sharp as the neutral engineer to assist and advise the Master. Upon the is-

up the system. The earlier we can start making connections, the sooner the City can receive sewer revenue.

"I do not know what size culvert was at every crossing, nor can I tell the condition some of your bridges were, prior to the starting of construction. I do know that the streets still require grading, but weather conditions as they are it would be futile to attempt this work right now.

"In order that we may bring the project to a satisfactory conclusion, I believe the City should make a list of all clean-up items which are unsatisfactory to you at this time. If you will send a copy to me (and one to the Contractor), I will see that this work is completed prior to my recommendation of final payment. * * *" (The letter contains an additional paragraph which makes some suggestion as to methods for checking on contractor's claim for rock removal.)

sue of substantial performance, the Special Master found that the contract had not been substantially performed, which finding after due hearing was approved by the trial court. The evidentiary support for such finding is very substantial. We believe that it would have been exceedingly difficult for the court upon this record to have reached any other conclusion.

## II.

Phoenix contends that the court erred in its award of damages and penalties to the City on its counterclaim. The amount of damages and penalties was determined by the Master and approved by the court, and judgment was entered therefor against Phoenix. The judgment included an award for $45,000 to complete the project. The work under the contract was to be completed by March 28, 1957, for a cost of $120,970 subject to variation for certain extras. Phoenix contends that damages were not adequately established. Testimony of the neutral engineers, State Department of Health engineers and engineers employed by the City all shows very substantial defects in the performance of the contract. The lines between 62 of the 135 manholes had to be uncovered and replaced in whole or in part to correct grade and alignment deficiencies. Other lines had to be cleaned. Many of the manhole covers were at an improper grade and otherwise defective, requiring rebuilding and repair. The out-fall pipe line required uncovering and repair because of defective sealing of the joints. Many of the defects were not visible and extensive excavation was necessary for discovery and repair of the defects. Some of the earlier estimates of cost of repair were considerably lower than the amount awarded but many of the defects subsequently discovered were unknown at the time such estimates were made. Welch, an engineer and contractor, testified that the cost of making the corrections would be $45,000 to $55,000. Phoenix offered no evidence as to cost of completing the system in a manner to conform with the requirements of the contract and the specifications.

■ There is some difference of opinion among the engineers whether the sewer lines were off-grade from the start or whether they settled later due to defective tamping and construction. Reser by his contract agreed to be responsible for any failure which occurred within one year of completion. The evidence establishes that the defects complained of in any event occurred within such year and Phoenix is responsible for the cost of necessary repairs. The $45,000 award fixed by the Master and approved by the trial court is supported by substantial evidence.

The City was allowed $4,573.85 for expenses incurred for clean-up work, grading of streets, and repairing culverts and road crossings, which items of work the contract required Reser to perform. We find no complaint as to the award of this item of damages and the allowance of such damages is supported by substantial evidence.

The contract provides:

"In event that the contractor shall not complete work on this project in the specified time there shall be deducted from the total payment an amount equal to the interest on all bonds issued for this project, for the time required to complete over the specified time."

■ The parties stipulated that the interest on the bonds issued by the City to pay for the sewer system required interest payments of $15,242.39 for the period from March 28, 1957, the scheduled date for completion of the project, up to September 30, 1960, and the City was awarded judgment in such amount. Phoenix contends such allowance was improper as Reser had substantially performed the contract by May 20, 1957. We have heretofore affirmed the court's determination that Reser did not substantially perform his contract. Hence, this item of special damage was properly allowed pursuant to the provisions of the contract.

[10] Phoenix complains of the allowance of penalties and attorneys' fees pursuant to V.A.M.S. § 375.420, for vexatious delay. This statute applies to suits brought on surety bonds on public works contracts. Camdenton Consol. School Dist. v. New York Casualty Co., 340 Mo. 1070, 104 S.W.2d 319. The statute does not apply to declaratory judgment actions. Hawkeye-Security Insurance Co. v. Davis, 8 Cir., 277 F.2d 765, 771. However, here the City has filed a counterclaim against Phoenix for damages and the judgment is based upon such counterclaim.

The statute authorizes the assessment of the penalty when the insurer has "vexatiously refused to pay such loss." We have frequently had occasion to consider this statute and its interpretation by the Missouri courts. We have held that the statute is penal in nature and is to be strictly construed, and that the penalty shall be assessed only when the refusal to pay is without reasonable or probable excuse. The penalty should not be imposed when there is ample ground for a reasonable difference of opinion on the issue of liability. American Indemnity Co. v. Swartz, supra; Maryland Casualty Co. v. Dalton Coal & Material Co., 8 Cir., 184 F.2d 181; Hawkeye-Security Insurance Co. v. Davis, supra; World Fire & Marine Ins. Co. v. Carolina Mills Dist. Co., 8 Cir., 169 F.2d 826, 4 A.L.R.2d 523.

Here a good faith dispute existed upon the bond construction issue with reference to the question of whether the engineer's acceptance should be final, the construction of the engineer's letter alleged to constitute an acceptance of the project, and the issue of whether the State Health Department regulations constituted part of the specifications. The court's memorandum opinion reflected that it found such issues to be vexing and troublesome. The court found it necessary to appoint a Master and afford him the aid of a neutral engineer to determine the issue of substantial performance. Additionally, there was a wide disparity of view among the engineers as to the extent of the deficiency in performance and resulting damage. The city engineer initially came rather close to accepting the project and somewhat later made an estimate that all deficiencies could be remedied for $15,000. The issue of credit due the contractor for rock excavation is also troublesome. Any rock excavation allowance would constitute an offset against the amount of the City's claim. The record does not support the court's finding that the plaintiff's delay in paying the City's claim was vexatious. The judgment awarded the City is modified by eliminating therefrom the statutory penalty and attorneys' fees awarded for vexatious delay.

## III.

Phoenix urges that the court erred in denying its claim for extra compensation under the contract for rock excavation. The contract calls for extra compensation for excavation of rock encountered on the project at the rate of $20 per cubic yard for solid rock and $10 per cubic yard for loose rock. The specifications, made a part of the contract, contain a provision reading:

"Payment for rock excavation shall be made upon the measurement of the Engineer. The quantity shall be determined by the Engineer by measuring the actual thickness of rock removed and calculating the volume of same within the width of the trench as it would be excavated in common excavation."

Phoenix, as assignee of Reser's rights under the contract, claims that it is entitled to $29,727.50 for rock excavation. The City contends it made payments for rock removal under early estimates totalling about $12,000 and that it has overpaid for rock removed by the sum of $4498.20.

Upon the rock issue, the Master's finding, approved by the court, is that neither party has established any right to recovery on the rock item, the Master stating:

"[T]he evidence in the case as to any over-payment by the City for rock and also on the claim of the plaintiff Surety Company and the contractor for any additional amount for the excavations and removal of solid and loose rock is so speculative, intangible, unconvincing, and indefinite as to not justify a finding either for the City on the overpayment or for the plaintiff Surety Company and the contractor on an under-payment for the rock."

In the trial court, the burden was upon Phoenix to establish its claim, and here Phoenix has the burden of demonstrating that the Master's finding, approved by the trial court, is clearly erroneous.

We are satisfied that the city engineer at no time made a determination of the amount of rock excavated or the amount due therefor. The engineer did on February 4, 1957, prepare a summary showing $41,000 owing for rock removal. The engineer marked the summary "not final." The rock dispute between the parties had been in existence for some time. The dispute involved both the quantity of rock and the classification thereof, that is, whether it was loose or solid. On April 22, 1957, the engineer wrote the City that he desired to discuss the rock matters with it, and he states among other things that he has not verified the rock estimates and suggests reducing the rock claim by $11,751 by reclassifying 1175 yards of rock as loose rock rather than solid rock, thus reducing the rock claim to $29,727.50. The engineer in his May 20, 1957, letter suggests ways to check on contractor's claim as to rock excavated. The engineer specifically testified that he based his rock summary upon reports that he received from the inspectors and from Reser, and not upon his own measurements or observations.

There is substantial evidentiary support in the inspectors' testimony and the evidence relating to independent tests made as to rock depth where the presence of rock was claimed by Reser to indicate that Reser made grossly false and exaggerated claims as to the amount of rock excavated. There is also evidence that Reser forged inspectors' signatures upon some of the rock reports relied upon by the engineer and that in other instances he added additional sheets to reports signed by inspectors. The evidence Phoenix presented in support of the rock claim is unsatisfactory and unconvincing. Phoenix's claim rests largely upon Reser's uncorroborated rock reports, many of which have been demonstrated to be false, and some of which bear forged inspector's approvals. Phoenix has offered no evidence to rebut the asserted falsity and forgery of the reports. There is ample basis for the court's refusal to credit or accept Phoenix's evidence in support of the rock claims. Phoenix has failed to demonstrate that the court's finding that it had failed to meet the burden of proof on the rock claims is clearly erroneous.

IV.

Phoenix's contention that the court committed error in granting intervenor Lee Mathews Machinery and Rental Company judgment against it on the statutory bond must be upheld. While there is evidence that Reser is indebted to the intervenor for equipment rental, there is no evidence which either directly or by reasonable inference supports a finding that such machinery was ever used upon the project here involved. The Master made no finding in support of the judgment. Mathews testified that he had no personal knowledge of the use of the rented equipment or the repair parts on the project we are here considering. No reasonable inference can be drawn on this record that Reser was not engaged in other projects and that any equipment rented was used on this project.

Since this case was tried to the court and a Master, by reason of Rule 52 (b) the plaintiff was not required to raise the question of the sufficiency of the evidence to support the findings in

the trial court to lay the foundation for its appeal.

## V.

Phoenix asserts that the court erred in allowing interest on the claims of certain intervenors. As to the claim of Dave Gerkin for labor, the record shows, as Phoenix points out, that Gerkin filed his claim against Phoenix on December 18, 1959, for $295.50, and that such claim was raised to $467.40 at the time of the trial. Mr. Gerkin, in his testimony in support of the claim, admitted that he had never made a demand upon either Phoenix or the contractor for the $467.40 principal allowed him by the court.

█ The bond contains no special provision for payment of interest nor does it contain any provision restricting liability of the bonding company as to interest. The claims asserted against the bonding company are within the penalty limits of the bond. The general rule in Missouri and elsewhere is that, in the absence of limitations and restrictions, the liability of the surety upon the bond is co-extensive with that of the principal. State ex rel. Scarborough v. Earley, 240 Mo.App. 868, 219 S.W.2d 879, 882; 72 C.J.S. Principal and Surety, § 92.

In Boyle v. Crimm, 363 Mo. 731, 253 S.W.2d 149, 157, the court states:

"An allowance of interest must be based upon either a statute or a contract, express or implied; * * *."

Section 408.020, V.A.M.S., provides:

"Creditors shall be allowed to receive interest at the rate of six per cent per annum, when no other rate is agreed upon, for all moneys after they become due and payable, on written contracts, and on accounts after they become due and demand of payment is made; * * *."

█ We find nothing to indicate any contract between Reser and Gerkin fixing the time when payment for his services was due nor any provision for the payment of interest. Thus, under the Missouri statute just cited, interest would be allowable upon the claim only after a demand for payment has been made. Since no such demand for payment was made by Gerkin, the court erred in allowing him interest upon his claim and the judgment in his favor is modified by reducing said judgment by $91.13, the amount of interest erroneously allowed by the court.

█ Some indefinite attack is made upon the interest allowed on claims of other intervenors. For the most part, the intervenors are not mentioned by name and no reference is made to the record testimony bearing upon the claims. Phoenix makes the contention that no specific demand was made for interest but does not allege that the appropriate demand for payment was not made. The record as to what actually happened is rather indefinite and unsatisfactory. It appears to us that Section 408.020 makes no requirement that a specific demand be made for interest and that a demand for payment upon an account is sufficient to start the running of interest thereon. Phoenix has failed to demonstrate that the allowance of interest to claimants other than Gerkin was clearly erroneous.

The judgment entered in favor of Lee Mathews Machinery and Rental Company is reversed.

The judgment in favor of Dave Gerkin is modified by eliminating therefrom $91.13 in interest allowed for periods prior to demand.

In all other respects, the judgments entered in favor of the intervenors are affirmed.

With respect to the judgment entered in favor of the City against Phoenix, the judgment is modified by eliminating therefrom the penalty and attorneys' fees for vexatious delay awarded by the court, and as so modified, the judgment is affirmed. Costs to be taxed against appellant.