**McCARTHY BROTHERS CONSTRUCTION COMPANY, a Missouri Corporation, Appellant,**

v.

**Samuel R. PIERCE, Jr., in his official capacity as Secretary of the United States Department of Housing & Urban Development, and National Church Residences of St. Charles, Missouri, an Ohio non-profit corporation, Appellees.**

No. 86–2415.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1987.

Decided Oct. 22, 1987.

Jeffrey T. Demerath, St. Louis, Mo., for appellant.

Eugene Lipscomb of H.U.D., Kansas City, Mo., for appellees.

Before ARNOLD and WOLLMAN, Circuit Judges and HENLEY, Senior Circuit Judge.

WOLLMAN, Circuit Judge.

McCarthy Brothers Construction Company appeals from a district court [1] judgment that denied its claim for an incentive fee under a construction contract and granted the counterclaim of National Church Residences of St. Charles, Missouri, for overpayment on that contract, 626 F.Supp. 981. We affirm.

## I

On September 29, 1981, National Church Residences of St. Charles, Missouri (National Church), entered into a contract with McCarthy Brothers Construction Company (McCarthy) for the construction of 134 units of housing for the elderly known as Jaycee Fairgrounds Village of St. Charles, Missouri (the Project). The Project was financed by a building loan secured by a mortgage and subject to the terms of the Building Loan Agreement between National Church and the Department of Housing and Urban Development (HUD) pursuant to the Housing Act of 1959, 12 U.S.C. § 1701q.

Included in the construction contract between National Church and McCarthy were FHA Form 2442A, "Construction Contract—Cost Plus," [2] and AIA Document A201, "General Conditions of the Contract for Construction," a document prepared by the American Institute of Architects. Under the contract, McCarthy was entitled to receive the actual cost of construction plus a fee of $247,272, with a stated maximum.

In addition to the basic contract fee, McCarthy was eligible for an incentive fee if its work was completed at a cost savings

---

1. The Honorable Roy W. Harper, United States Senior District Judge for the Eastern and Western Districts of Missouri.

2. HUD required the use of this form as a condition of HUD participation in the financing and financing-related activities of the Project.

by the prescribed date. Specifically, Article 3A(3) of the contract provided:

> If the work is completed prior to the time for completion specified in this contract, the Owner shall make an incentive payment to the Contractor. The amount of the payment shall be ascertained according to the instructions on the attachment entitled Incentive Payment Computation which is made a part hereof.

The parties have stipulated that the amount of the incentive fee calculated pursuant to the attachment is $131,850. The only controversy is whether McCarthy's work was "completed prior to the time for completion specified in [the] contract."

The original contract required completion by November 30, 1982. This completion date was extended to March 14, 1983, by change orders executed by McCarthy, National Church, and National Church's architect, Mackey and Associates (Mackey), and approved by HUD in accordance with the terms of the contract. The dispute involves the following four contract provisions:

> Article 2D provides:
> The date of substantial completion shall be the date the HUD representative signs the hUD [sic] Representatives Trip Report, (Form HUD 5379), which indicates construction is complete and which Report is substantially endorsed by the Chief Architect as being the Final Inspection Report.
> Article 2C states in pertinent part:
> If the work is not substantially completed in accordance with the Drawings and Specifications, including any authorized changes, by the date specified above, or by such date to which the contract time may be extended, the maximum sum stated in Article 3A(1) below shall be reduced by $2,472.82 as liquidated damages, for each day of delay until the date of substantial completion.

Article 8.1.3 [3] of AIA Document A201 provides:

The Date of Substantial Completion of the Work or designated portion thereof is the Date certified by the Architect when construction is sufficiently complete, in accordance with the Contract Documents, so the Owner can occupy or utilize the Work or designated portion thereof for the use for which it is intended.

Article 1A states that "[t]he provisions of [Form 2442A] * * * take precedence over all inconsistent provisions in the said AIA General Conditions."

The parties have stipulated to the following chronology of events concerning the issue of substantial completion.

On February 10, 1983, McCarthy submitted Change Order No. 16 to National Church and Mackey concerning the installation of 120 "grab bars" for Project bathtubs that were not reflected in the original specifications. Referenced in Attachment A to Change Order No. 16 was a letter from McCarthy to Mackey pertaining to the grab bar work, which advised Mackey that "[t]ime is of the essence, inasmuch as we are nearing final acceptance of this project and estimated completion of the work outlined by this Proposal is six weeks from the date of the Change Order approval." The line item of Change Order No. 16 labeled "Delay due to the Above Changes" was left blank, however. Mackey and National Church executed Change Order No. 16 on February 14, 1983, and HUD approved it on March 9, 1983.

On March 1, 1983, McCarthy executed and submitted AIA Document G704, "Certificate of Substantial Completion," to National Church and Mackey, who executed it on March 4, 1983.

On March 14, 1983, St. Charles city officials inspected the Project and certified it as available for occupancy and in compliance with the St. Charles Fire Department's Fire Safety Survey.

During the morning of March 15, 1983, McCarthy, National Church, Mackey, and

---

**3.** For the purposes of Article 8.1.3, "Architect" refers to Mackey, not to the HUD architect as referred to in Article 2D of Form 2442A.

HUD Project Representatives conducted a walk-through of the building and an inspection of the final punch list. That afternoon a public dedication and ribbon-cutting ceremony was held at the Project, National Church took occupancy of the Project, its resident managers moved into the building, and its liability insurance went into effect. In addition, Mackey executed the "Architect's Certificate" portion of FHA Form 2403–A, whereby Mackey approved McCarthy's request for payment of 100% of the contract balance and certified that on March 14, 1983, "all prior work and the work, labor and materials to be paid for under this Request for Payment are satisfactory and in accordance with the Contract Documents."

On March 23, 1983, National Church moved its first subsidized tenants into the Project, which achieved full occupancy on May 20, 1983. Also on March 23, HUD, McCarthy, and Mackey met at the Project and executed FHA Form No. 2485, "Permission to Occupy—Project Mortgages," which had been executed by National Church on March 16.

On March 25, 1983, HUD advised McCarthy that HUD's Final Inspection Report for the Project was not completed at either the March 15 or March 23 meetings. That day the HUD architect completed the final inspection of the Project and issued and executed the Final Inspection Report, which described McCarthy's "actual progress" on the Project as "100%" and stated that "[c]onstruction [was] acceptably completed," subject to the escrow of funds sufficient to assure completion of certain items of delayed completion listed on the Report. Included among those items was "repair damage to masonry, lower level of north wing of building, south face at lintel bearing." HUD's Chief Architect endorsed this report on June 7, 1983. Between March 15 and March 25, 1983, building cleaning and touch-up of painting was undertaken at the Project.

The masonry problems referred to in the March 25 Trip Report were originally noted on February 7, 1983, by a HUD representative during a routine inspection. At that time the HUD representative noted "cracks and chipping of face brick at top of piers supporting steel beams over windows at south side north wing lower level." The representative indicated that these defects should be inspected by a structural engineer. These deficiencies were also noted on subsequent HUD inspection reports. Several meetings were held relative to this problem, which ultimately required replacement of nine masonry piers with steel tube columns. These revisions were completed by June 7, 1983. Neither party contends that the masonry repairs affected occupancy of the Project.

The installation of the grab bars commenced on April 6, 1983, and was completed on April 12, 1983. On September 22, 1983, McCarthy submitted an unnumbered change order to HUD requesting an extension of twenty-nine days for the grab bar work. Although this change order was executed and approved by National Church and Mackey, HUD refused to approve it because final inspection and final completion of the Project had occurred on June 7, 1983.

Based on the stipulated facts, the district court found that substantial completion occurred too late for McCarthy to qualify for the incentive fee. The court also found that HUD need not extend the contract's completion date to April 20, 1983, pursuant to the grab bar change order. Finally, the district court entered a judgment in favor of National Church in the amount of $131,850 on its counterclaim against McCarthy for return of the incentive fee.

## II

When state law governs,[4] it is our duty to apply the law as we anticipate the highest court of that state would. *Economy Fire and Casualty Co. v. Tri–State Ins. Co.*, 827 F.2d 373, 375 (8th Cir.1987). "In such cases, it is our practice to defer to the state-law rulings of a federal district court

---

**4.** Article 7.1.1 of the General Conditions states that "[t]he Contract shall be governed by the law of the place where the Project is located," which in this case is Missouri.

sitting in the state whose law is controlling." *Id.* We defer to the interpretations of Missouri law made by the trial court, overturning its state-law rulings only if we find them "fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state-court opinion." *Id.*

■ First, McCarthy argues that Article 2D is applicable only between HUD and National Church and that Article 8.1.3 of the General Conditions applies to determine McCarthy's eligibility for the incentive fee. In this regard, McCarthy relies on *Modern American Mortgage Corp. v. Skyline Park*, 614 F.2d 1009 (5th Cir.1980), which, apparently interpreting a similar contract, held that the Article 2D definition of substantial completion was applicable only between the owner and the mortgagee, not between the owner and the contractor. *Id.* at 1012. We find *Modern American* distinguishable from the present case.

The *Modern American* court was interpreting "four simultaneously executed documents as one contract, attempting to reconcile the various parts to discern the intent of the parties." Although McCarthy has alluded to other documents, it has not presented us with simultaneously executed documents, nor has it asked us to determine the intent of the parties by reconciliation.[5] Rather, we have been presented with one contract, solely between McCarthy and National Church, which specifically defines the date of substantial completion as "the date the HUD representative signs the hUD [sic] Representatives Trip Report." It is well-settled, in Missouri and generally, "that parties to a building contract may agree that a designated person, such as a named architect or engineer, shall determine questions relating to the performance of the contract." *Phoenix Assurance Co. v. Appleton City*, 296 F.2d 787, 790 (8th Cir.1961).

■ McCarthy contends that various canons of contract interpretation point to the application of the definition of substantial completion found in Article 8.1.3. These rules of interpretation must be put in the proper perspective, however. When the terms of a contract clearly indicate the intent of the parties, the provisions of the contract are controlling and must be applied without reference to any rules of interpretation. *H.K. Porter Co. v. Wire Rope Corp. of America*, 367 F.2d 653, 660 (8th Cir.1966). Courts have no right to remake a contract into something other than what it clearly states and intends. *Id.*

For example, McCarthy argues that the application of Article 2D fails to harmonize and give meaning to all contract provisions because Article 8.1.3 is rendered meaningless. The "harmonious interpretation" preference is inapplicable, however, when the contract by its own terms removes any potential conflict in the contract's provisions. *Johnson Controls, Inc. v. City of Cedar Rapids*, 713 F.2d 370, 374 (8th Cir. 1983) (no need for use of "harmonious interpretation" where use of "except as otherwise provided" clause resolved any potential conflict). Although Articles 2D and 8.1.3. are in conflict,[6] Article 1 resolves this conflict by providing that the provisions of Form 2442A, which contains Article 2D, "take precedence over all inconsistent provisions in the said AIA General Conditions," which contain Article 8.1.3.

McCarthy also contends that the canons of contract interpretation dictate that any ambiguities should be resolved against the drafter and that courts should avoid interpretations leading to unfair, improbable,

---

5. At most, McCarthy argues that Article 2D of Form 2442A has an independent purpose because it defines substantial completion for the purposes of paragraph 19 of the Building Loan Agreement between HUD and National Church. We find no basis for this application.

6. As stated by the district court: "The inconsistency arises over the person designated to determine 'substantial completion.' Article 8.1.3 requires the administering architect to make the determination while Article 2D delegates that responsibility to HUD." *McCarthy Bros. Constr. Co. v. Pierce*, 626 F.Supp. 981, 983 (E.D.Mo. 1986).

absurd, or whimsical results. Absent any conflict, we find the contract unambiguous; Article 2D clearly states that "the date of substantial completion shall be the date the HUD representative signs the hUD [sic] Representatives Trip Report, (Form HUD 5379)." Furthermore, this result is not so unfair, improbable, absurd, or whimsical as to warrant court intervention, given the specificity of the contract language. Unlike the cases cited in McCarthy's brief, McCarthy has received the standard fee provided in the contract, $247,272, and is not being assessed liquidated damages.[7] Rather, McCarthy's claim relates to an additional incentive fee, which the contract expressly makes conditional upon timely completion as defined in the contract.

McCarthy also argues that various HUD documents reflect HUD's deference to Mackey's determination of substantial completion. We disagree. While Mackey is required to make determinations of substantial completion, those determinations are frequently subject to HUD approval. For example, McCarthy notes that paragraph 5 of the HUD document entitled "Amendment to AIA Document B181, Standard Form of Agreement Between Owner and Architect for Housing Services," provides that Mackey shall issue Certificates of Substantial Completion. Appellant's Brief at 31. McCarthy, however, fails to consider paragraph 2 of that same document, which states:

> The Owner and the Architect recognize the interest of the Mortgagee and HUD/FHA and any action or determination by either the Owner or the Architect is subject to acceptance or rejection by the Mortgagee and by HUD/FHA.

Accordingly, we uphold the district court's determination that "[a] thorough and careful reading of the contract clearly indicates that HUD's determination of 'sub-stantial completion' controls the award of incentive fees" pursuant to Article 2D of the contract. *McCarthy Bros.*, 626 F.Supp. at 983.

### III

■ Having concluded that Article 2D is controlling, we next address whether Article 8.1.3 should nonetheless operate to backdate the March 25 HUD Trip Report[8] to March 14, the date Mackey certified the Project was substantially complete. To do otherwise, McCarthy contends, would allow the HUD representative to make his determination without any guidelines and totally at his own whim and complete discretion.

McCarthy's analysis is incorrect in light of Missouri law. Although Missouri recognizes that parties to a building contract may agree that a designated third party shall determine questions relating to the performance of a contract, those determinations are only binding as long as the decisions of the third party are not in bad faith, the product of a gross mistake, or arbitrary or capricious. *Sunkyong Int'l, Inc. v. Anderson Land & Livestock Co.*, 828 F.2d 1245, 1250 (8th Cir.1987); *Phoenix*, 296 F.2d at 790; *Fullington v. Ozark Poultry Supply Co.*, 327 Mo. 1167, 39 S.W.2d 780, 782–83 (1931); *Twin River Constr. Co. v. Pub. Water Dist. No. 6*, 653 S.W.2d 682, 693 (Mo.Ct.App.1983); *Juengel Const. Co. v. Mt. Etna, Inc.*, 622 S.W.2d 510, 514 (Mo.Ct.App.1981); *Massman Const. Co. v. Lake Lotawana Ass'n*, 240 Mo.App. 469, 210 S.W.2d 398, 402 (1948).

The fact that the third party's decision reflects an error in judgment or that a court may ultimately reach a different conclusion does not establish bad faith. *School Dist. of Kirksville v. Mississippi Valley Trust Co.*, 116 S.W.2d 146, 150 (Mo. Ct.App.1938). Gross mistake for this pur-

---

7. Because no liquidated damages have been assessed, we do not address whether such damages would be enforceable in this situation.

8. The district court determined that the date of substantial completion under Article 2D was the date the HUD representative signed the Trip Report (March 25, 1983), rather than the date the Trip Report was endorsed by the Chief Architect (June 7, 1983). Our result would be the same using either date.

pose necessarily implies bad faith or failure to exercise an honest judgment. *Stiers Bros. Const. Co. v. Moore*, 158 S.W.2d 253, 257 (Mo.Ct.App.1942). Actions are arbitrary or capricious if the underlying reasons are trivial, unrelated to the process at issue, or are wholly unsupported by a basis in fact. *Lile v. Hancock Place School Dist.*, 701 S.W.2d 500, 507 (Mo.Ct.App.1985) (determining whether Board's action in dismissing a teacher was arbitrary or capricious).

Thus, the March 25 date established by HUD would not be invalidated solely by a determination that the Project was substantially complete on March 14, 1983. Under Missouri law, unless McCarthy establishes that HUD's issuance of the Trip Report was delayed from March 15 to March 25 because HUD acted in bad faith, committed a gross mistake, or was arbitrary or capricious, the March 25 date must stand.

McCarthy has failed to make the required showing. McCarthy has not alleged that HUD acted in bad faith or failed to exercise honest judgment; it acknowledges that "all parties acted in good faith." Letter from McCarthy to Johnny Bullock, Jr., HUD Area Manager (Apr. 5, 1983). Moreover, the HUD Trip Reports establish that HUD did not act arbitrarily or capriciously in issuing the Final Inspection Report on March 25, 1983. The March 4 Trip Report describes McCarthy's actual progress as "98%+" and states that the HUD representative "[p]ointed out a number of items on [the] ground floor that need[ed] correction." On March 15, the HUD representative described McCarthy's actual progress as "99%" and noted that "[m]any punch list items as listed by [Mackey] have not been completed" and that "[c]omments [were] given to [Mackey] concerning a number of items noted during [the] tour of [the] building." The March 23 Trip Report describes McCarthy's actual progress as "99%+" and states that "[Mackey was] to advise HUD when [the] building will be ready for final inspection." In addition, the Trip Reports reflect comments concerning the ma-

sonry problems. It was not until the March 25 Final Inspection Report that HUD found McCarthy's actual progress to be "100%" and the "construction acceptably completed."

## IV

■ Finally, McCarthy argues that the contract completion date should have been extended to April 20, 1983, due to the grab bar modification, thereby extending the formal completion date of the contract beyond March 25, 1983. We disagree.

First, Change Order No. 16, as filed with National Church and Mackey on February 10 and subsequently approved by HUD on March 9, did not request an extension of time. The stipulated facts establish that McCarthy knew how to properly request such an extension. On three previous change orders it clearly requested extensions by completing the line items concerning the length of delay and labeling the changes as extensions in the description column, neither of which was done on Change Order No. 16.

Second, HUD did not act arbitrarily and capriciously in disapproving the unnumbered change order dated September 22, 1983. This extension request was untimely. Article 8.3.2 requires claims for extensions of time to be made not more than twenty days after the commencement of the delay. As HUD indicated, the entire Project was completed, including all masonry repairs, on June 7, 1983.

The district court's order is affirmed.